482 A.2d 1008

**Harry GRAND, Appellant,**

v.

**Fred DURST.**

Superior Court of Pennsylvania.

Argued May 10, 1984.

Filed Oct. 5, 1984.

William W. Spalding, Philadelphia, for appellant.

Roger E. Legg, West Chester, for appellee.

Before WICKERSHAM, WIEAND and HOFFMAN, JJ.

## OPINION

WICKERSHAM, Judge:

Harry Grand appeals from the order of the Court of Common Pleas of Chester County sustaining Fred Durst's exception to the lower court's initial decision and granting judgment in favor of Durst.

The instant litigation arose out of an automobile accident on July 28, 1977 in which a vehicle driven by appellee Durst rear-ended appellant Grand's automobile. Grand filed this suit alleging that, as a result of Durst's negligence, he sustained a strained and partially torn rotator cuff, bicepital tendonitis, and a cervical sprain, causing him severe pain and suffering in or around his arm, shoulders, neck, and back.

A non jury trial was held before the Honorable Charles B. Smith on March 17 and 18, 1982. At the close of the trial, defendant-appellee Durst moved for a directed verdict, claiming that plaintiff-appellant Grand failed to plead and prove that any of the no fault thresholds had been exceeded. The court denied appellee's motion and entered a verdict in favor of appellant in the amount of $7,000.00. Appellee filed an exception reiterating his contention that appellant failed to plead and prove that his cause of action met any of the requirements excepting it from the No Fault Act's general abolition of tort liability. Upon reconsidera-

tion of this argument, the court sustained appellee's exception and entered a verdict in favor of appellee. This appeal timely followed.

Appellant presents the following issues on appeal:

1. Did the lower court err in its application of the holding in *Bromiley v. Collins*, 1 D & C 3d 94 (1977) to the facts of the present case creating a disparity of interpretation and application of the No-Fault Act among the Common Pleas Courts?

2. Did the lower court err in determining that Appellant's Complaint did not comply with the No-Fault Act, 40 P.S. § 1009 et se[q]., and dismissing it for non compliance even though Appellant had moved to amend under Rule 1033 of the Pennsylvania Rules of Civil Procedure which the court had allowed by denying Appellee's motion of nonsuit?

3. Did the testimony of Appellant's expert witness and Appellee's witness as to the "serious and permanent" nature of Appellant's injury satisfy the requirements of Section 301(a)(5)(B) of the No-Fault Act?

Brief for Appellant at 2.

Because of our disposition of appellant's third argument, we find it unnecessary to address his first two issues. Judge Smith found that regardless of whether appellee timely raised appellant's failure to properly plead compliance with the No Fault Act's threshold requirements and regardless of whether appellant should have been permitted to amend his complaint, appellant failed to prove either serious and permanent injury or medical expenses in excess of $750.00 and, therefore, a verdict must be entered in favor of appellee. We agree.

Generally, the No Fault Act abolishes tort liability for injuries arising out of the maintenance or use of a motor vehicle.[1] Section 301(a)(5) of the Act, however, sets forth an exception which permits tort actions for general damages if the plaintiff meets one of its several "threshold"

1. § 301(a) of the No Fault Act. Act of July 19, 1974, P.L. 489, No. 176, art. III, § 301, 40 P.S. § 1009.301.

provisions.[2] Only the first two "threshold" requirements are relevant to the instant case; they provide:

(5) A person remains liable for damages for non-economic detriment if the accident results in:

(A) death or serious and permanent injury; or

(B) the reasonable value of reasonable and necessary medical and dental services, including prosthetic devices and necessary ambulance, hospital and professional nursing expenses incurred in the diagnosis, care and recovery of the victim, exclusive of diagnostic x-ray costs and rehabilitation costs in excess of one hundred dollars ($100) is in excess of seven hundred fifty dollars ($750)

. . . .

In summary, appellant could recover damages in a tort action against appellee upon proof that he had suffered "serious and permanent injury", (section 301(a)(5)(A)) or that his medical expenses exceeded $750.00 (section 301(a)(5)(B)).

The lower court held that appellant failed to prove that his injuries were "serious and permanent." No appellate cases have specifically addressed the meaning of the terms "severe and permanent" for purposes of section 301(a)(5)(A). It would seem obvious, however, that plaintiff cannot rely on his own subjective statements and feelings, but rather, must establish his proof through the presentation of expert medical testimony. Instantly, appellant's expert, Dr. H. Warren Goldman, never explicitly stated that appellant's condition was severe and permanent. Upon a thorough review of Dr. Goldman's deposition, we find very little testimony indicating the witness' analysis of the severity and permanence of appellant's condition. When asked what his prognosis for appellant was, the doctor responded:

I think that if nothing is done, then I think that he's not going to get much better than he is, and he probably would get worse, because this is a progressive syndrome, the cervical spondylosis.

2. *Id.* 40 P.S. § 1009.301(a)(5).

If something is done, I think, surgically, I think, there is a reasonable chance that he would be significantly improved.

Deposition of Dr. H. Warren Goldman at 24.

The doctor later testified: "I think that the probability is, he will continue to have pain, although, there are instances, and not rare ones, where these things can remit spontaneously." *Id.* at 30. We agree with the lower court that Dr. Goldman's testimony did not establish that appellant's injuries were permanent and severe. Neither does an examination of appellee's expert witness' testimony lead us to that conclusion. Therefore, we hold that the lower court did not abuse its discretion in finding that appellant failed to meet the threshold requirement of section 301(a)(5)(A) of the No Fault Act.

Appellant also failed to establish medical expenses in excess of $750.00 as required by section 301(a)(5)(B). While copies of medical bills were attached to appellant's interrogatories and to the transcript of Dr. Goldman's deposition, no documentation of these bills was admitted into evidence. The record indicates that the court refused to admit these documents because they were never authenticated by Dr. Goldman or any other witness. R.R. at 24a–25a. In fact, after thoroughly examining the record, we are unable to determine if appellant's counsel ever attempted to authenticate the documents or offer them into evidence.

The only testimony as to medical expenses is Dr. Goldman's statement that one option open to appellant might consist of surgery that would cost "in the neighborhood of about two thousand dollars." Deposition of Dr. H. Warren Goldman at 27. This surgery, however, has never actually been performed, nor is it planned. It is simply a possible alternative which appellant is free to accept or reject. The $750.00 threshold cannot be fulfilled by reliance on conjecture that this surgery might be performed at some time in the future. *See Giannini v. Carden,* 286 Pa.Super. 450, 429 A.2d 24 (1981).

We agree with the lower court that judgment must be entered in favor of the appellee because appellant failed to prove that he met any of the requirements excepting this litigation from the No Fault Act's general abolition of tort liability.[3]

Order affirmed.

**3.** The lower court held that appellant's failure to meet the threshold requirements deprived it of jurisdiction. Lower ct. op. at 3. The Pennsylvania Supreme Court seems to indicate that the issue is not one of jurisdiction, "but of the plaintiff's right to maintain an action for damages." *Martin v. Soblotney,* 502 Pa. 418, 426, 466 A.2d 1022, 1026 (1983). In any event, it is clear that because appellant failed to meet the threshold requirements, he cannot be awarded a verdict in his favor.