John McHUGH, Jr., Appellant

v.

PROCTOR & GAMBLE, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 11, 2005.
Filed May 20, 2005.

---

Gary Solomon, Jenkintown, for appellant.

James A. Doherty, Scranton, for appellee.

Before: BENDER, GANTMAN, and JOHNSON, JJ.

GANTMAN, J.:

¶ 1 Appellant, John McHugh, Jr., asks us to determine whether the trial court erred when it granted the motion for summary judgment, filed on behalf of Appellee, Proctor & Gamble, which terminated Appellant's personal injury action. We hold the trial court properly granted Appellee's motion for summary judgment because it was timely filed prior to the start of the parties' second trial and there were no genuine issues of material fact to preclude summary judgment in this case. Accordingly, we affirm.

¶ 2 The relevant facts of this appeal are as follows:

This appeal derives from a personal injury action instituted by [Appellant] against [Appellee]. [Appellant] was employed by Hydro Clean Tek ("Hydro"). Hydro often contracted with [Appellee] to clean large industrial equipment in [Appellee's] paper pulp mill, located in Mehoopany, Pennsylvania (the "Mehoopany plant"). On July 3, 1993, [Appellant] was working at the Mehoopany plant cleaning a brown stock washer. In order to clean the washer, [Appellant] stood on a scaffold, erected inside of the washer.

\* \* \*

When [Appellant] stepped on the scaffold, the scaffold collapsed and [Appellant] fell to the ground. As a result of this fall, [Appellant] suffered severe knee and ligament injuries.

On January 5, 1994, [Appellant] filed a complaint against [Appellee], alleging

that [Appellee] negligently erected the scaffold. After numerous continuances, jury selection began on September 14, 1999.

* * *

Prior to the commencement of trial, [Appellant] presented a motion for a mistrial based on the ground that the trial court forced him to use three peremptory challenges to remove [three possible jurors], when those individuals should have been stricken for cause. The trial court denied [Appellant's] motion. The case proceeded to trial and the jury "rather quickly" determined that [Appellee] was not negligent.

[Appellant] filed post-trial motions, in which he requested a new trial. [Appellant] claimed that, *inter alia,* the trial court's improper denial of his challenges for cause warranted a new trial. The trial court denied [Appellant's] post-trial motions and [Appellant appealed].

*McHugh v. Proctor & Gamble Paper Products Co.,* 776 A.2d 266, 268–70 (Pa.Super.2001).

¶ 3 On appeal, this Court ruled in favor of Appellant, holding: 1) the employer-employee relationship between some jurors and Appellee warranted the disqualification of those jurors; and 2) the close family relationship between another juror and Appellee's representative present at trial precluded that juror's service. Consequently, this Court vacated the judgment in favor of Appellee and remanded the case for a new trial. Following several continuances, Appellee filed a motion for postponement on November 26, 2002. On August 25, 2003, the trial court granted Appellee's motion and scheduled a pre-trial conference for September 19, 2003. The court subsequently entered an order which rescheduled the conference for November 21, 2003.

¶ 4 On November 20, 2003, Appellee filed a motion for summary judgment. Appellee's motion averred that Appellee had no control over the circumstances which led to Appellant's accident. Instead, "[Hydro] had sole and exclusive responsibility for the method and manner of performing the work." (Motion for Summary Judgment, 11/20/03, at 2). On February 6, 2004, Appellant filed his response in opposition to Appellee's motion for summary judgment. Appellant alleged that Appellee had constructed the scaffold, "thereby retaining control of the precise instrumentality which caused [Appellant's] accident." (Appellant's Response in Opposition to Motion for Summary Judgment, 2/6/04, at 3). Additionally, Appellant claimed genuine issues of material fact existed regarding Appellee's liability for constructing an unsafe scaffold, as well as Appellee's liability for "failing to supply materials out of which a safe scaffold could be constructed." (*Id.* at 3–4).

¶ 5 The trial court granted Appellee's motion for summary judgment on March 24, 2004. On April 20, 2004, Appellant filed a motion for reconsideration. The trial court denied Appellant's motion for reconsideration by order entered April 23, 2004. Appellant filed his notice of appeal on April 21, 2004.

¶ 6 Appellant raises three issues for our review:

DID THE [TRIAL] COURT ERR AND/OR ABUSE ITS DISCRETION IN FAILING TO DISMISS [APPELLEE'S] MOTION FOR SUMMARY JUDGMENT AS UNTIMELY?

DID THE [TRIAL] COURT ERR AND/OR ABUSE ITS DISCRETION IN GRANTING [APPELLEE'S] MOTION FOR SUMMARY JUDGMENT BY FINDING THAT NO GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING [APPELLEE'S] LI-

ABILITY FOR BUILDING THE UNSAFE SCAFFOLD INVOLVED IN THE ACCIDENT?

DID THE [TRIAL] COURT ERR AND/OR ABUSE ITS DISCRETION IN GRANTING [APPELLEE'S] MOTION FOR SUMMARY JUDGMENT BY FAILING TO EVEN CONSIDER [APPELLEE'S] LIABILITY FOR SUPPLYING MATERIALS OUT OF WHICH A SAFE SCAFFOLD COULD NOT BE CONSTRUCTED?

(Appellant's Brief at 4).

¶ 7 Appellate review of an order granting summary judgment is subject to the following scope and standard of review:

> [W]e are not bound by the trial court's conclusions of law, but may reach our own conclusions. In reviewing a grant of summary judgment, the appellate court may disturb the trial court's order only upon an error of law or an abuse of discretion. The scope of review is plenary and the appellate court applies the same standard for summary judgment as the trial court.

*Devine v. Hutt*, 863 A.2d 1160, 1166–67 (Pa.Super.2004) (internal citations omitted).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misap-

plies the law or exercises its discretion in a manner lacking reason.

*Id.* (quoting *Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super.2000) (internal citations omitted)).

■ ¶ 8 Moreover, arguments not presented to the trial court in opposition to summary judgment cannot be raised for the first time on appeal. *Id.* at 1169 (citing *Grandelli v. Methodist Hosp.*, 777 A.2d 1138 (Pa.Super.2001); *Harber Philadelphia Center City Office Ltd. v. LPCI Ltd. Partnership*, 764 A.2d 1100, 1104 (Pa.Super.2000), *appeal denied*, 566 Pa. 664, 782 A.2d 546 (2001)).

■ ¶ 9 In his first issue, Appellant argues Appellee's motion for summary judgment was untimely.[1] Appellant, however, has failed to provide relevant case law to support his argument. Specifically, Appellant does not cite any cases which: 1) preclude the filing of a motion for summary judgment after remand; and 2) prohibit the use of trial admissions as a basis for a later motion for summary judgment. Therefore, this issue is waived. *See Hawkey v. Peirsel*, 869 A.2d 983 (Pa.Super.2005) (stating issue waived where appellant failed to cite relevant authority in support of argument). *See also* Pa.R.A.P. 2119(a) (stating argument portion of brief must contain citation of authorities as are deemed pertinent).[2]

---

1. Appellant also complains Appellee improperly based its motion on testimony from the first trial. Appellant did not present this argument to the trial court in his response in opposition to Appellee's motion for summary judgment. Therefore, Appellant cannot raise this argument for the first time on appeal. *See Devine, supra; Harber, supra.*

2. Appellant relies on *William J. Heck Builders, Inc. v. Martin*, 315 Pa.Super. 395, 462 A.2d 253 (1983) for the proposition that a motion for summary judgment is inappropriate after

trial has commenced. (Appellant's Brief at 14). In *Heck Builders*, this Court reversed a grant of summary judgment made following the plaintiff's oral motion during a bench trial. Here, Appellee filed its motion for summary judgment after this Court vacated the judgment in favor of Appellee at the first trial. Appellee also filed its motion before the start of the second trial. Therefore, the facts in *Heck Builders* are distinguishable and do not control.

¶ 10 In his second and third issues, Appellant asserts summary judgment is improper if there are genuine issues of material fact regarding the cause of action. Appellant contends the testimony from the parties' first trial established two genuine issues of material fact for the parties' second trial. Specifically, Appellant argues this case must proceed to trial for determinations on: 1) whether Appellee's employees constructed the scaffold; and 2) whether Appellee is liable for supplying unsafe materials for the construction of the scaffold. Appellant concludes this Court must vacate the judgment and remand the matter for trial. We disagree.

¶ 11 Pennsylvania Rule of Civil Procedure 1035.2 governs summary judgment as follows:

**Rule 1035.2. Motion**

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is **no genuine issue of any material fact** as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2 (emphasis added).

¶ 12 Instantly, Appellant filed his complaint against Appellee on January 5, 1994. The case proceeded to trial on September 14, 1999. Appellant's witnesses testified that Appellee's employees had been working on and around the scaffold shortly after the scaffold had been built. Appellant's witnesses also testified that Appellee's "common" practice had been to erect scaffolds for the use of subcontractors. However, Mr. Mark Sparks, the owner of Hydro, testified that Hydro employees had erected the scaffold at issue:

[COUNSEL]: Mr. Sparks, on the day of this accident who built the platform inside the Brown Stock washer on the south side of that equipment?

[WITNESS]: That was Jerry Stanton, Joe Fontana...[Appellant] and Paul Austin.

[COUNSEL]: Were they all your employees?

[WITNESS]: Yes, they were.

(N.T. Trial, 9/15/99, at 405–06). Mr. Sparks also testified that he had the discretion to choose the materials used to construct the scaffold:

[COUNSEL]: Was it your company's responsibility to secure whatever equipment was necessary to perform the task of cleaning?

[WITNESS]: I supplied the (unintelligible) and the guns and the hoses. The scaffold was there. I could use it if I wanted to or I could bring my own.

[COUNSEL]: But if you wanted to bring your own scaffolding in could you have done so?

[WITNESS]: Yes.

[COUNSEL]: If you wanted to bring your own plywood or (F) brackets could you have done so?

[WITNESS]: I could have done that, yes.

[COUNSEL]: And is that because you had the responsibility of getting the job done [in] whatever manner you thought[,] in the best way to get it done?

[WITNESS]: That's correct.

(*Id.* at 406–07).

¶ 13 Further, Mr. Jerry Stanton, Appellant's Hydro co-worker, testified for Appellee that he had set up and installed the platform inside the washer, and Hydro employees had worked on the platform "for a full shift" before Appellant's accident. (N.T. Trial, 9/16/99, at 597). Mr. Stanton also testified about the choice of scaffolding materials as follows:

[COUNSEL]: Now can you tell me what made you use this size plywood in installing the platform rather than the forty inch the one piece [sic]?

[WITNESS]: Well, it just depended on whichever was easiest to get at. You know, you're on a time crunch. You have a certain amount of time to do it. If it's there you used what was there.

[COUNSEL]: Was the forty inch plywood available for the July, 1993 outage for the installation of the platform?

[WITNESS]: **Yeah, there were all kinds that were available.**

(*Id.* at 599–600) (emphasis added). Significantly, Appellant did not rebut this testimony. The jury found Appellee had not been negligent. Appellant filed post-trial motions, which the trial court denied. On appeal, this Court vacated the judgment in favor of Appellee and remanded the matter for a new trial based solely on matters related to the selection of the jurors at the first trial.

¶ 14 On remand, before the start of the second trial, Appellee filed its motion for summary judgment. Appellant's response in opposition to Appellee's motion for summary judgment continued to maintain that Appellee had: 1) constructed the scaffold; and 2) failed to provide proper materials to build the scaffold. Appellant offered no new evidence that he intended to introduce at the second trial. Instead, Appellant liberally relied on the testimony proffered at the first trial to prove the existence of genuine issues of material fact.

¶ 15 The trial testimony of both Mr. Sparks (for Appellant) and Mr. Stanton (for Appellee) established that Hydro employees had built the scaffold at issue. Moreover, these witnesses testified that Hydro had the freedom to choose the materials used to construct the scaffold and that all kinds of materials had been available for construction. As the trial court noted:

[A]t oral argument on the motion [for summary judgment], both counsel freely referenced the trial testimony to argue that there is, or is not, such an issue of material fact. Both counsel concede, however, that at any new trial, the evidence produced will be identical to that of the first trial.

* * *

[Appellant] testified that he "believed" that the scaffolding was erected by [Appellee's] employees because he saw "P & G employees" in the vicinity of the scaffolding.

* * *

The president of [Hydro], Mark Sparks, testified that [Hydro] employees erected the scaffolding under his supervision and direction. Further, [Hydro] chose to use the materials present at the plant to make scaffolding, but were not required to use those materials.

In summary, there is no evidence to support [Appellant's] theory of liability.

(Trial Court Opinion, entered April 26, 2004, at 2–3). We accept the trial court's reasoning and conclude there were no genuine issues of material fact to preclude summary judgment in this case. *See Devine, supra. See also Mentzer v. Ognibene*, 408 Pa.Super. 578, 597 A.2d 604 (1991), *appeal denied*, 530 Pa. 660, 609

A.2d 168 (1992) (holding grant of summary judgment proper because defendant-property owners did not have responsibility to prevent or warn plaintiff about dangers presented by independent contractor's own negligence; allegedly dangerous condition was not pre-existing defect in owners' premises and evidence did not establish that owners had exercised control over operative details of work or condition of worksite).

¶ 16 Based upon the foregoing, we hold the trial court properly granted Appellee's motion for summary judgment because it was timely filed prior to the start of the parties' second trial and there were no genuine issues of material fact to preclude summary judgment in this case. Accordingly, we affirm the trial court's order entering summary judgment in Appellee's favor.

¶ 17 Order affirmed.