J-S76032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ANTOINETTE BROWN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KINSER B604, LLC | |
| Appellee | |
| v. | |
| ALLEN VERNAL AND EDWANDA SHEPHERD | No. 1633 EDA 2016 |
| Appellee | |

Appeal from the Order Entered April 27, 2016
In the Court of Common Pleas of Northampton County
Civil Division at No(s): No. CV-2014-9136

BEFORE:  STABILE, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED OCTOBER 21, 2016**

Appellant, Antoinette Brown ("Ms. Brown"), appeals from the April 27,

2016, order granting summary judgment in favor of Appellees Allen Vernal[1]

_____

[*] Former Justice specially assigned to the Superior Court.
[1] As the trial court noted, "Vernal Allen" has been misidentified in pleadings, as well as the caption, as "Allen Vernal."  For the sake of consistency, we shall refer to this Appellee as "Allen Vernal."

and Edwanda Shepherd ("Mr. Vernal" and "Ms. Shepherd," respectively).[2] After a careful review, we affirm.

The relevant facts and procedural history are as follows: On September 25, 2014, Ms. Brown filed a complaint sounding in negligence against Kinser, the owner of a single family row home located at 604 Carlton Street, in Bethlehem, PA. As the basis for her claims, Ms. Brown alleged that, on February 17, 2014, she was at the property as an invitee for a scheduled hair appointment and could access the salon only by climbing the stairs leading from the sidewalk of the property to the front door of the property. Ms. Brown alleged that at some time prior to her appointment there had been precipitation in the form of snow, rain, or freezing rain; however, the precipitation had stopped prior to her arrival at the property. She averred there had been no snow or ice removal performed on the property and, as a result thereof, the sidewalk leading to the property, as well as the steps leading to the front door, were covered in snow and ice. Ms. Brown indicated that she slipped and fell off the steps, thereby receiving substantial injuries, including damage to her legs necessitating surgery and

---

[2] In its April 27, 2016, order, the trial court also granted summary judgment in favor of Kinser B604, LLC ("Kinser"). However, in her notice of appeal, Ms. Brown indicated she was appealing the the entry of summary judgment in favor of Mr. Vernal and Ms. Shepherd only. Moreover, Ms. Brown has developed no argument on appeal pertaining to Kinser. Consequently, we affirm the entry of summary judgment in favor of Kinser on this basis.

resulting in permanent disfigurement and loss of mobility. Accordingly, she sought damages for her pain and suffering, as well as lost wages.

Kinser filed an answer with new matter, as well as a joinder complaint to add as defendants Mr. Vernal and Ms. Shepherd, who were the tenants of the property.[3] Therein, Kinser presented claims of indemnification and/or contribution, and additionally averred Mr. Vernal and Ms. Shepherd were solely liable to Ms. Brown. Ms. Brown filed an answer to Kinser's new matter, and Mr. Vernal and Ms. Shepherd filed an answer to Kinser's joinder complaint.

On December 31, 2015, Ms. Brown filed a motion for partial summary judgment and a supporting brief. Ms. Brown averred there had been a blizzard for three days, which stopped on or before February 16, 2014, and no snow or ice removal had been performed prior to her arrival at the property on February 17, 2014. Accordingly, more than twenty-four hours had elapsed since the end of the blizzard and the day Ms. Brown slipped and fell. She indicated that, after having her hair done and upon leaving the

---

[3] With regard to the right to join additional defendants, Pa.R.C.P. 2252 provides:

> [A]ny party may join as an additional defendant any person not a party to the action who may be [] solely liable on the underlying cause of action against the joining party, or. . .liable to or with the joining party on any cause of action arising out of the transaction or occurrence or series of transactions or occurrences upon which the underlying cause of action against the joining party is based.

Pa.R.C.P. 2252.

property, she slipped and fell as she attempted to descend the exterior steps, which were covered with snow and ice. Ms. Brown noted that Kinser owned the property, and Mr. Vernal had leased the property; however, the lease expired on December 31, 2013. Ms. Brown indicated that, after 2012, no agent of Kinser had removed ice or snow from the subject property.

In developing her motion, Ms. Brown relied upon Article 721.03 of the City of Bethlehem's ordinances[4] and Restatement (Second) of Torts §§ 355-362, governing the liability of lessors to persons who enter upon the land. She reasoned that Kinser had responsibilities for snow and ice removal under the former rendering it liable for her injuries as a landlord maintaining control over a portion of the premises under the latter. She further reasoned that, in the absence of a written lease between Kinser and the occupants of the property apportioning responsibility for ice and snow removal, Kinser was responsible for the same and liable to Ms. Brown. Ms. Brown's Motion for Partial Summary Judgment, filed 12/31/15.[5]

Furthermore, in developing her motion, Ms. Brown relied upon Section 107.7 of the International Property Maintenance Code, which was adopted

_____

[4] Article 721.03 provides, in relevant part, that "[n]o person owning, controlling or occupying any lot. . .shall allow or permit any. . . snow [or] ice. . .to remain upon the pavements, sidewalks, footways or rights-of-way in front of or adjoining such lot for a period longer than twenty-four hours after the rain, snow, [or sleet]." *Id.* Exhibit D. Moreover, Article 721.03 indicates that one who neglects to remove such snow or ice within the specified time is guilty of maintaining a nuisance. *Id.*
[5] The motion is not paginated.

by the City of Bethlehem.[6]   Ms. Brown noted that Kinser had no agent living within 20 miles of Bethlehem, and thus, she suggested Kinser was in violation of Section 107.7 of the Code.[7]

Kinser, as well as Mr. Vernal and Ms. Shepherd, filed responses to Ms. Brown's partial motion for summary judgment.   Moreover, on February 4, 2016, Mr. Vernal and Ms. Shepherd filed a joint motion for summary judgment.   Therein, pointing to Ms. Brown's admissions made during her deposition testimony, they sought summary judgment on the basis of the assumption of risk doctrine.   Specifically, Mr. Vernal and Ms. Shepherd indicated that Ms. Brown admitted the following uncontradicted facts during her deposition:

> On the way to [the subject property Ms. Brown] and her daughter noticed lots of snow on the ground that was frozen. For many parts of the walk they had to walk in the street because sidewalks were still full of snow and ice; and they had to climb over piles of snow to get from [the] street to the sidewalk.
>
> When they got to [the subject property], there was a small pathway to the front steps with ice and snow on the steps.   It

---

[6] Section 107.7 provides "no certificate of occupancy shall be issued for a rental dwelling. . .unless there is provided to the inspection bureau the name and address of an agent residing within a 20 mile radius of the City of Bethlehem[.]" Ms. Brown's Motion for Partial Summary Judgment, filed 12/31/15.

[7] As the trial court aptly noted, in the conclusion of her motion for partial summary judgment, Ms. Brown summarily sought a finding of liability as to Kinser, Mr. Vernal, and Ms. Shepherd.   However, consistent with her complaint, Ms. Brown's arguments in her motion are directed to Kinser solely.

was light out and [Ms.] Brown could see the snow and ice on the steps to [the subject property]. It was slippery. There was a banister on the right [s]ide of the steps and [Ms.] Brown sent her daughter up the steps ahead of her to make sure that she wouldn't fall. They held onto the banister as they went up on the right side of the steps, which was a little clearer.

After a while, [Ms.] Brown left [the subject property] to go to a store to get some supplies for her hair. She left her daughter [at the property] to play[.] It was still light out and she went out the same door[,] stayed on the side of the steps[,] and held onto the banister with her left-hand going down. The steps were still slippery. When she returned she came back up the steps again holding onto the banister and staying to the right because the steps were slippery.

[Ms.] Brown never told [Ms. Shepherd] that the steps were icy or slippery. She never asked her to put anything on the steps, or clear them to help. She never asked [Ms. Shepherd] if there was another exit.

Mr. Vernal and Ms. Shepherd's Motion for Summary Judgment, filed 2/4/16[8]

(citations to Ms. Brown's deposition omitted).

Further, they indicated Ms. Brown admitted that, after her appointment, she called a cab to retrieve her and her daughter, and the cab driver told Ms. Brown to leave her bags/purse by the door and he would carry them. *Id.* Ms. Brown admitted during the deposition that she was aware that it was icy and she had to be careful as she descended the stairs. *Id.* However, Ms. Brown chose to carry her purse and another bag, thus descending the stairs without holding onto the railing resulting in her slipping and falling. *Id.* Accordingly, Mr. Vernal and Ms. Shepherd claimed

_____

[8] The motion is not paginated.

Ms. Brown was barred from recovery under the assumption of risk doctrine.

On February 16, 2016, Kinser filed a motion for summary judgment averring it was entitled to judgment as it "is undisputed that [Kinser] was under no duty to act for the protection of [Ms. Brown] at the time of [her] alleged slip-and-fall at the single family rental property occupied by [Mr. Vernal and Ms. Shepherd]." Kinser's Motion for Summary Judgment, filed 2/16/16.[9] To this end, Kinser argued it was a landlord out of possession who had no control over any portion of the premises.[10]

Alternatively, echoing in large part the same portions of Ms. Brown's uncontradicted deposition testimony as set forth in Mr. Vernal and Ms. Shepherd's summary judgment motion, Kinser argued it was relieved of any duty to protect Ms. Brown under the assumption of risk doctrine.

Ms. Brown filed an answer to Mr. Vernal and Ms. Shepherd's joint motion for summary judgment. Therein, she admitted all factual allegations contained in Mr. Vernal and Ms. Shepherd's motion for summary judgment.

_____

[9] The motion is not paginated.

[10] In support thereof, Kinser averred it was undisputed that, although the initial lease between Kinser and Mr. Vernal expired on December 31, 2012, the parties had executed a written lease extension, thus extending the term of the written lease to December 31, 2013. Moreover, it was undisputed that, prior to the expiration of the extension, the parties verbally agreed to extend the lease on a month-to-month basis indefinitely, and as of the filing of the motion, Mr. Vernal and Ms. Shepherd remained as tenants. Kinser noted the parties' written lease agreements provided that the tenant was to "keep the property clean and safe," and Kinser retained no control or possession over any portion of the premises, including the steps at issue.

Her only denial was to the averment "[Ms. Brown] is barred from recovery by the doctrine of assumption of the risk[,]" since such averment constituted a conclusion of law to which no response was needed. Ms. Brown's Answer, filed 3/7/16.[11] Additionally, in her brief in opposition to Mr. Vernal and Ms. Shepherd's motion for summary, Ms. Brown confined her argument to the issue of duty,[12] *i.e.*, which defendant (the property owner or the tenants) had the duty to ensure the steps were free from snow and ice. She averred that Kinser (the property owner) owed her the duty since there was no written lease in place at the time of the incident.

Ms. Brown also filed an answer to Kinser's motion for summary judgment. Therein, she admitted all of the factual allegations contained in Kinser's motion as to the circumstances of her fall.

By order and opinion entered on April 27, 2016, the trial court denied Ms. Brown's motion for partial summary judgment, but granted Kinser's, as well as Mr. Vernal and Ms. Shepherd's, motions for summary judgment. Ms. Brown filed a timely notice of appeal specifically indicating that she was appealing from the order entered on April 27, 2016, "with respect[] to Allen Vernal and [Ed]wanda Shepherd, only." The trial court directed Ms. Brown

---

[11] The answer is not paginated.

[12] She also argued that the trial court should dismiss Mr. Vernal and Ms. Shepherd's joint motion for summary judgment on the basis it was untimely filed. The trial court explained in its order/opinion that their motion was not untimely filed. **See** Trial Court Order/Opinion, filed 4/27/16, at 10.

to file a Pa.R.A.P. 1925(b) statement, Ms. Brown timely complied, and the trial court filed a brief Pa.R.A.P. 1925(a) opinion relying on its previous order/opinion.

With regard to the trial court's entry of summary judgment in favor of Mr. Vernal and Ms. Shepherd, Ms. Brown presents the following issue on appeal:

> Did the [trial court] err in not giving proper weight to the fact that on all previous occasions when [Ms. Brown] entered or exited the home it was daylight and on the occasion when [Ms. Brown] left the home and slipped and fell, it was nighttime and there was no porch light turned on which made conditions entirely different from any previous time [Ms. Brown] entered or exited the [subject premises]?

Ms. Browns' Brief at 4.

Ms. Brown alleges that the trial court erred in holding, as a matter of law, that she assumed the risk of her injury, thus relieving Mr. Vernal and Ms. Shepherd of a duty of care. In this regard, she avers that there are genuine issues of material fact. Specifically, she avers that she "testified that there was no snow and ice on the stairs during the day and that on all other occasions prior to her leaving the home that evening when she entered or existed the house it was daylight out." Ms. Brown's Brief at 11. She notes that, had she slipped on the stairs during the daylight hours, she would not contest that she is barred from recovery under the assumption of risk doctrine. *Id.* at 12. However, Ms. Brown avers that she is not barred under the assumption of risk doctrine since:

[S]he came to the steps for the first time in the dark with no porch light lit when she exited the premises and was injured. This was the first time she had come to this risk and she was not previously aware of it nor was there any other option for egress.

*Id.* at 13.

We note the following relevant legal precepts.

> [S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt.
>
> *Truax v. Roulhac*, 126 A.3d 991, 996 (Pa.Super. 2015) (*en banc*)(citations omitted).
> An order granting summary judgment will be reversed if the trial court committed an error of law or abused its discretion. *Id*. The decision relating to "whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo.* This means we need not defer to the determinations made by the lower tribunals." *Id*. at 997 (citation omitted). It is settled that, "If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied." *Id*. (citation omitted).

*Malanchuk v. Sivchuk*, ___ A.3d ___, 2016 WL 4943061, *4 (Pa.Super.

filed Sept. 15, 2016) (citations, quotation marks, and quotations omitted).

Moreover, under the rule announced in ***Borough of Nanty–Glo v. American Surety Co. of New York***, 309 Pa. 236, 163 A. 523, 524 (1932), summary judgment is prohibited "where the moving party relies exclusively

on oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genuine issue of material fact **except** where the moving party supports the motion by using admissions of the opposing party or the opposing party's own witness." ***Lineberger v. Wyeth***, 894 A.2d 141, 149 (Pa.Super. 2006) (quotation and quotation marks omitted) (emphasis in original). Additionally, it is well settled that arguments not presented to the trial court in opposition to summary judgment cannot be raised for the first time on appeal. ***McHugh v. Proctor v. Gamble***, 875 A.2d 1148, 1151 (Pa.Super. 2005) (citations omitted).

Here, we initially note that, in their motion for summary judgment, Mr. Vernal and Ms. Shepherd argued that Ms. Brown was barred from recovery under the doctrine of assumption of the risk. In her answer and supporting brief in opposition to Mr. Vernal and Ms. Shepherd's joint motion for summary judgment, Ms. Brown admitted the facts as alleged by Mr. Vernal and Ms. Shepherd and did not address their assumption of risk argument. As the trial court notes in in its order/opinion, "[i]n her brief *contra* the instant motion, [Ms. Brown] wholly fails to address [Mr. Vernal and Ms. Shepherd's] reliance on the assumption of the risk doctrine, electing instead to further her theory that. . .Kinser is liable for her injuries." Trial Court Order/Opinion, filed 4/27/16, at 11.

In the case *sub judice*, Ms. Brown has alleged, for the first time on appeal, that there is a genuine issue of material fact, *i.e.*, that there was no

- 11 -

snow or ice on the stairs during the daylight hours, and thus, Ms. Brown was not aware of the dangerous conditions when she slipped and fell in attempting to descend the stairs during the nighttime hours. As she did not raise this argument in opposition to Mr. Vernal and Ms. Shepherd's motion for summary judgment, it is proper to affirm the trial court's entry of summary judgment in favor of Mr. Vernal and Ms. Shepherd on this basis. *See McHugh*, *supra*.

Additionally, we agree with the trial court that there is no genuine issue of material fact, and Mr. Vernal and Ms. Shepherd are entitled to judgment as a matter of law under the assumption of risk doctrine. In this regard, we rely on the trial court's well-reasoned order/opinion. *See* Trial Court Order/Opinion, filed 4/27/16, at 11-14. Further, we note that the basis of Ms. Brown's appellate argument is that she testified during her deposition that there was no snow or ice on the stairs during the daylight hours, and thus, the danger was not known or obvious to her when she later descended the stairs in the dark without a porch light. *See* Ms. Brown's Brief at 11-12. However, she is mistaken in her characterization of her deposition testimony. In fact, during her deposition, Ms. Brown repeatedly admitted that she saw thick ice on the stairs when she initially arrived at the property, as well as when she returned to the property after buying supplies. Ms. Brown's Deposition testimony, dated 10/14/15, at 36-39, 45. Ms. Brown testified that, when she slipped and fell down the stairs, "I wasn't

rushing. I wasn't—no, I wouldn't say I was rushing because I knew it [*sic*] was ice, so I had to be careful." ***Id.*** at 57. Further, when asked if she knew the steps were covered in ice when she descended and fell, Ms. Brown replied, "Yes." ***Id.***

For all of the aforementioned reasons, we affirm the trial court's April 27, 2016, order entering summary judgment in favor of Kinser, Mr. Vernal, and Ms. Shepherd. We direct the parties to attach a copy of the trial court's April 27, 2016, order/opinion in the event of further proceedings.

Affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2016

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY,
PENNSYLVANIA

CIVIL DIVISION

ANTOINETTE BROWN,
      Plaintiff

   v,

KINSER B604, LLC,
      Defendant                C-0048-CV-2014-9136

   v.

ALLEN VERNAL and WANDA SHEPHERD,
      Additional Defendants.

## ORDER OF COURT

AND NOW, this 22th day of April, 2016, after consideration of the parties'
respective motions, it is hereby **ORDERED** and **DIRECTED** that:

1. Plaintiff Antoinette Brown's Motion for Partial Summary Judgment is DENIED;

2. Defendant Kinser B604, LLC's Motion for Summary Judgment is GRANTED; and

3. Additional Defendants Motion for Summary Judgment is GRANTED.

The rationale for this Order is set forth more fully in the following Statement of Reasons.

## STATEMENT OF REASONS

This action commenced on September 25, 2014, with the filing of a Complaint wherein
Plaintiff Antoinette Brown brought claims for negligence and loss of wages against Defendant
Kinser B604, LLC, as the owner of a property located at 604 Carlton Street in Bethlehem,
Northampton County. As the basis for her claims, Plaintiff alleged that on or about February 17,
2014, she was at the subject property as an invitee, when she fell upon ice and snow that had not
been removed by Defendant Kinser, thereby sustaining injuries to her legs requiring surgical

intervention, permanent disfigurement, permanent loss of sensation, limited mobility and loss of employment. Complaint, ¶¶4-12.

Subsequent to the accomplishment of service, Defendant Kinser answered the Complaint on February 17, 2015, at which time Defendant Kinser also filed a Joinder Complaint against the tenants of the property, Additional Defendants, Vernal Allen and Edwanda Shepherd.[1] Additional Defendants answered the Joinder Complaint on April 9, 2015. A status conference was held on September 14, 2015 before the Honorable Michael J. Koury, at which time deadlines were set for discovery and the filing of dispositive motions.

Plaintiff timely filed a Motion for Partial Summary Judgment, and thereafter, Defendant Kinser and the Additional Defendants filed their own Motions for Summary Judgment. These matters were designated to the undersigned via the Argument Court list of March 22, 2016, at which time argument was held on Additional Defendants' Motion for Summary Judgment. The remaining motions were submitted on brief. All three (3) motions are now ready for disposition.

### Standard of Law

Summary judgment serves to eliminate the waste of time and resources of both litigants and the Court in cases where a trial would be a useless formality. Liles v. Balmer, 567 A.2d 691, 692 (Pa. Super. 1989). A motion for summary judgment may only be granted when it is apparent from the entire record, inclusive of the pleadings, depositions, affidavits, answers to interrogatories and admissions on file, that there are no triable issues of material fact in the case and the movant is entitled to summary judgment as a matter of law. PA.R.C.P. 1035.2.[2] A material fact is one

---

[1] Additional Defendants are misidentified in the caption as "Allen Vernal and Wanda Shepherd."

[2] After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law (1) whenever there is no genuine issue of any material fact as a to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts

2

which affects the outcome of a case. Beach v. Burns Int'l. Security Svcs., 593 A.2d 1285, 1286 (Pa. Super. 1991). In considering a motion for summary judgment, the Court must review the record in the light most favorable to the non-movant, resolving all doubts in their favor. Id.

However,

> parties seeking to avoid the entry of summary judgment against them may not rest upon averments contained in their pleadings; rather, they are required to show, by depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue for trial, and the court must ignore controverted facts contained in the pleadings and restrict its review to material filed in support of and in opposition to a motion for summary judgment and to those allegations in pleadings that are uncontroverted. The court, in ruling on a motion for summary judgment, must ignore controverted facts contained in the pleadings.

Overly v. Kass, 554 A.2d 970, 972 (Pa. Super. 1989).

In resolving a summary judgment motion, it is not the province of the Court to decide the facts, but only to ascertain whether any issue of material fact exists. Godlewski v. Pars Manufacturing Co., 597 A.2d 106 (Pa. Super. 1991). Summary judgment should only be granted in those cases that are free and clear from doubt. Johnson v. Harris, 615 A.2d 771 (Pa. Super. 1992).

## Discussion

**Plaintiff's Motion for Partial Summary Judgment as Against Defendant Kinser and Defendant Kinser's Motion for Summary Judgment**

As written, Plaintiff's Motion for Partial Summary Judgment seeks a finding of liability against all Defendants with respect to the claims against them. However, in keeping with her Complaint, all of her arguments are addressed to Defendant Kinser. As the basis of her motion, Plaintiff relies upon Bethlehem City Ordinance -- Article 721, Article 1733, § 107.7 of the

---

essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. PA.R.CIV.P. 1035.2.

3

262a

International Property Maintenance Code, and the Restatement (Second) of Torts §§ 355-362, to argue that Defendant had responsibilities for snow and ice removal under the former rendering it liable for Plaintiff's injuries as a landlord maintaining control over a portion of the premises under the latter.

Section 355 of the Restatement sets forth the general rule that except as otherwise provided, "a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee or sublessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession." RESTATEMENT (SECOND) OF TORTS § 355 (1965). The exceptions to that general rule are set forth at §§ 357 and 360 to 362 of the Restatement. Section 357 renders liable a lessor who contracts "by a covenant in the lease or otherwise to keep the land in repair" and fails to do so, and § 360 through § 362 renders a lessor liable under certain circumstances where he retains control of a portion of the land.[3]

Bethlehem City Ordinance - Article 721 is entitled "Streets and Sidewalks." Memorandum of Law in Support of the Motion for Summary Judgment of Defendant, Kinser B604, LLC, Exhibit K. Subsection 721.03 of the ordinance is entitled "Removal of Snow, Ice or Rubbish," and it provides as follows:

> No person owning, controlling or occupying any lot adjoining or fronting upon any of the streets, sidewalks, lanes, alleys, pavements, footways or rights-of-way in the City shall allow or permit any mud, sand, gravel, leaves, snow, ice or rubbish of any sort or description to be or remain upon the pavements, sidewalks, footways or rights-of-way in front of or adjoining such lot for a period longer than twenty-four hours after the rain, snow, sleet or hail which is the cause thereof has ceased to fall or after the same has been deposited thereon in any manner.

---

[‡]     Section 360 renders liable a lessor who maintains control of a portion of the leased premises if an accident occurs on the retained portion of land and the lessee or others lawfully present by the consent of the lessor or lessee are entitled to use that land; § 361 renders liable a lessor who maintains control of a portion of land that is necessary to the use of the leased portion; and § 362 renders liable a lessor who negligently makes or purports "to make repairs on the land while it is in the possession of his lessee." RESTATEMENT (SECOND) OF TORTS, §§ 360-362.

4

Any person owning, controlling or occupying such lot who neglects to remove the mud, sand, gravel, leaves, snow, ice or rubbish of any sort or description from the pavement, sidewalks, footways or rights-of-way in front of or adjoining his lot within the time specified in this section, shall be guilty of maintaining a nuisance, and upon conviction shall be punished as provided in Section 721.99.

Any person owning, controlling and/or plowing an off street parking lot area, a sidewalk and/or any other property adjoining or fronting upon any street, sidewalk, lane, alley, pavement, footway or right-of-way in the City who plows or causes to place snow, mud, sand, gravel, leaves or rubbish of any sort or description into the street, sidewalk, lane, alley, pavement, footway or right-of-way or repositions such materials from the parking lane to the traffic lane of a street or cartway which causes an obstruction to the normal flow of vehicular traffic shall be guilty of maintaining a nuisance and upon conviction therefor shall be punished as provided in Section 721.99.

Id.

In reliance on the foregoing authority, Plaintiff argues that in the absence of a written lease between Defendant Kinser and the Additional Defendants apportioning responsibility for ice and snow removal, Defendant Kinser was responsible for the same under City of Bethlehem Ordinance Article 721, and is strictly liable to Plaintiff thereunder.

Finally, Plaintiff cites to Article 1733, § 107.7 of the International Property Maintenance Code as adopted by the City of Bethlehem, entitled "Absentee Landlord," provides that "[n]o Certificate of Occupancy shall be issued for any rental dwelling ... unless there is provided to the Inspection Bureau the name and address of an agent residing within a twenty-mile radius of the City of Bethlehem, authorized to accept service of process on behalf of the title owner or operator of said dwelling." Plaintiff's Motion for Partial Summary Judgment Under Pa.R.C.P. 1035.2, Exhibit F. Plaintiff's reliance on this Code section appears limited to pointing out that at the time Defendant purchased the subject property, it did not have an agent residing within twenty (20) miles of the City as required by § 107.7. Plaintiff's Motion for Partial Summary Judgment Under Pa.R.C.P. 1035.2, Exhibits A, F. While Plaintiff appears to suggest that such failure would render

5

any Certificate of Occupancy invalid, the Court finds this argument wholly irrelevant to the disposition of the instant motion, which is addressed to whether or not Defendant Kinser is liable to Plaintiff under tort law, and/or under local ordinance.

In response to Plaintiff's motion and in support of its own motion for summary judgment, Defendant Kinser makes a threshold argument that it is a landlord out of possession, and that as such, it has no liability to Plaintiff under the Restatement. Based on the evidence adduced during discovery, Defendant further asserts that it cannot be held liable to Plaintiff even pursuant to Bethlehem City Ordinance - Article 721, which, they assert, must be read in *part materia* with Article 1739 of the Ordinance, entitled "Regulated Rental Unit Occupancy."[4] In the alternative, Defendant Kinser suggests that there are issues of material fact with regard to whether the area where Plaintiff fell was clear or covered in ice and snow, and whether she fell on the property or the sidewalk adjacent thereto, which preclude entry of summary judgment in Plaintiff's favor.

In resolving the parties' motions, the Court must first consider whether the evidence of record demonstrates that Defendant Kinser is a landlord out of possession and therefore not liable to Plaintiff under tort law principles as a matter of law; and second, whether, putting tort law principles aside, Defendant Kinser can be held liable to Plaintiff pursuant to local ordinance.

In order to establish that one is a landlord out of possession, the landlord must be able to demonstrate the existence of a lease with the tenant.

> The relationship of landlord and tenant is always created by a contract, either express or implied, and it cannot exist without such a contract. The contract which gives rise to the relationship of landlord and tenant is known as a lease. A lease

---

4  Article 1739 defines a 'regulated rental unit' as "a dwelling unit occupied by three or more, but not more than five, unrelated persons under a rental agreement." Id. at 1739.01(B)(20). A 'dwelling unit' is defined as 'a room or group of rooms within a dwelling and forming a single unit and used for living and sleeping purposes, having its own cooking facilities, and a bathroom with a toilet and a bathtub or shower." Id. at 1739.01(B)(8). Finally, "unrelated" is defined as "[o]f or pertaining to two (2) or more persons not related to one another through blood, adoption or marriage." Id. at 1739.01(B)(23). Based upon these definitions, Defendant argues that the leased premises does not qualify as a "regulated rental unit," and therefore, the requirements of the ordinance are inapplicable to it.

6

265a

embraces any agreement, whether express or implied, which gives rise to the relationship of landlord and tenant. A lease agreement will only be implied when

the circumstances show that the landlord-tenant relationship was contemplated by all parties concerned. A lease agreement may be in writing or parol . . .

8A. SUMM. PA. JUR. 2D PROPERTY § 26:2 (April 2016).

In the instant case, Defendant and Additional Defendant executed a written lease for the subject premises on January 4, 2012 for the period through December 31, 2012. Memorandum of Law in Support of the Motion for Summary Judgment of Defendant, Kinser B604, LLC, Exhibit D. Thereunder, the tenant leased the entire premises, and was responsible for keeping it clean and safe. Id. The lease terminated at its end date unless extended in writing. Id. The parties executed a lease extension through December 31, 2013. Memorandum of Law in Support of the Motion for Summary Judgment of Defendant, Kinser B604, LLC, Exhibit G at 20-21. Subsequently, and at the time of the accident, Additional Defendants continued to reside at the property without a written lease or lease extension, paying the same amount of rent to Defendant on a monthly basis, pursuant to a verbal agreement to remain in an ongoing landlord-tenant relationship for an indefinite period. Id. at 22-23; 26-29; Memorandum of Law in Support of the Motion for Summary Judgment of Defendant, Kinser B604, LLC, Exhibit H at 43-44. On these facts, the Court finds the record sufficient to establish that Defendant was a landlord out of possession at the time of the accident pursuant to an effective oral lease that adopted the terms of the previous written lease.[5]

---

[5]
Q: Who is responsible for snow and ice removal under the lease?
A: The tenant.

. . .
Q: Was there a verbal agreement between you and Mr. Allen after the extension ran out?
A: Yes.

. . .
Q: And do you remember roughly what the terms of that agreement were?
A: My recollection would be he wanted to stay in the property, rent would continue as it is.

. . .
Q: How about the rest of the written lease, was it your understanding that the terms would stay in place?
A: Yes.

7

Based on the determination that Defendant is a landlord out of possession, the Court concludes that Defendant cannot be held liable to Plaintiff pursuant to principles of tort law. However, in order to resolve the present motions, the Court must also consider whether Defendant is liable to Plaintiff under local ordinance. In this regard, Plaintiff relies on Article 721 of the Bethlehem City Ordinance, which requires that anyone "owning, controlling or occupying any lot adjoining or fronting upon any of the streets, sidewalks, lanes, alleys, pavements, footways or rights-of-way in the City . . . [and] [a]ny person owning, controlling and/or plowing an off street parking lot area, a sidewalk and/or any other property adjoining or fronting upon any street, sidewalk, lane, alley, pavement, footway or right-of-way in the City" shall remove snow and ice from such areas within twenty-four (24) hours of weather event that causes the same.

"It is a familiar canon of construction of statutes and ordinances, as indeed of contracts, wills, and other written instruments, that presumably every word, sentence or provision therein is intended for some purpose, and accordingly must be given effect." Sterling v. City of Philadelphia, 106 A.2d 793, 794 (Pa. 1954).

> Like statutes, the primary objective of interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance. Where the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921; *see also* 1 Pa.C.S. § 1903 (words and phrases in a statute shall be construed in accordance with their common and accepted usage) . . . Tribunals confronted with interpreting undefined terms in an ordinance are guided to construe words and phrases in a sensible manner, utilize the rules of grammar and apply their common and approved usage, and give undefined terms their plain, ordinary meaning. *Diocese of Altoona–Johnstown v. Zoning Hearing Bd. of Borough of State College*, 899 A.2d 399 (Pa. Commw. 2006).

Adams Outdoor Advert., LP v. Zoning Hearing Bd. of Smithfield Twp., 909 A.2d 469, 484 (Pa. Commw. 2006).

---

Brief in Response to Plaintiff's Motion for Partial Summary Judgment, Exhibit A at 20, 43-45.

In order to determine whether there is any possibility that Defendant could be held liable to Plaintiff under Article 721, the Court must examine the portion of the ordinance referencing any "person owning, controlling or occupying" a property, pursuant to these principles of construction. The Ordinance defines the word "Person" as

> any natural individual, firm, trust, partnership, association, or corporation, in his or its own capacity or an administrator, conservator, executor, trustee, receiver, or other representative appointed by a court. Whenever the word "person" is used in any section of this ordinance prescribing a penalty or fine as applied to partnerships or associations, the word shall include the partners (both general and limited) or members thereof and such word as applied to corporations shall include the officers, agents, or employees thereof *who are responsible for any violation of said section.*

Bethlehem City Ordinance Article 721.01 (emphasis added).

This definition, coupled with the use of the word "or," given its plain meaning, indicate that Defendant cannot be held liable to Plaintiff under the Ordinance, for nothing in the ordinance or the definition apportions liability to any particular individual. It merely holds the responsible person to a certain set of standards and consequences. This intention is further evidenced by the use of the word "or" in the relevant portion of the Ordinance. Merriam-Webster.com defines the word "or" as "used as a function word to indicate *an alternative*." http://www.merriam-webster.com/dictionary/or (page last visited April 14, 2016) (emphasis added). The identity of the responsible person must be dictated by legal principles. Thus, as here, where a landlord is wholly out of possession, such that he leases the entire premises, does not retain control of any portion, and the agreement between landlord and tenant calls for the tenant to maintain the property, the tenant is the responsible party under the law. City of Philadelphia v. Merch. & Evans Co., 145 A. 706, 706-07 (Pa. 1929) ("If the owner is out of possession because of a lease or otherwise, his liability ceases, and the tenant or occupier is liable for injuries occurring to a third person on the premises, because of such failure to repair sidewalks . . . a tenant in possession is, for all practical

9

purposes, the owner of the property."); 3 WEST'S PA. PRAC. TORTS: LAW AND ADVOCACY § 5.13 (Updated December 2015).

In light of the foregoing, it is apparent that Defendant Kinser cannot be held liable to Plaintiff as a matter of law. Accordingly, Defendant Kinser's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment is **DENIED** as to Defendant Kinser.

**Plaintiff's Motion for Partial Summary Judgment as to Additional Defendants**
**and Additional Defendants' Motion for Partial Summary Judgment**

Although Plaintiff's Motion for Partial Summary Judgment is addressed to all Defendants, Plaintiff sets forth few facts, and no argument, in the motion itself or in her supporting brief, with respect to Additional Defendants. Accordingly, it is clear that Plaintiff is not entitled to summary judgment as a matter of law as to Additional Defendants, and the Court moves to disposition of Additional Defendants' summary judgment motion, which is predicated on the assumption of the risk doctrine.

However, before the Court can reach the merits of the motion, it must first address Plaintiff's contention that the motion must be dismissed as untimely. In support thereof, Plaintiff relies on a Status Conference Order signed by the Honorable Michael J. Koury on September 2, 2015 and filed on September 14, 2015, which in pertinent part, set forth a deadline of December 31, 2015 for the filing of all dispositive motions. Additional Defendants' Motion was filed thirty-five (35) days after the deadline, on February 4, 2016. However, the matter was timely praeciped to the Argument Court list of March 22, 2016, and briefs were timely filed in accordance with N.C.R.C.P. N211(c).

In resolving Plaintiff's objection, the Court finds guidance in the law governing the submission of late post-trial motions. In that context, a Court, in the absence of an objection, may

10

269a

"elect to overlook the procedural default . . . but if objections are lodged . . . the trial court may still, in its discretion, elect to entertain the motion or dismiss the motion, but must first consider whether the objecting party would be prejudiced" as a result. Arches Condo. Ass'n. v. Robinson, 131 A.3d 122, 129 (Pa. Commw. 2015). Applying the same analysis to Additional Defendants' late summary judgment motion, the Court notes that Plaintiff fails to aver any prejudice resulting therefrom, and none is apparent from the record. Accordingly, the Court declines to dismiss the motion as untimely, and it moves to a consideration of the merits.

Additional Defendants' summary judgment motion is predicated on a formulation of the assumption of the risk doctrine which states that:

> [w]hen an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from those risks. By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself. It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers.

Montagazzi v. Crisci, 994 A.2d 626, 635-36 (Pa. Super. 2010).

In furtherance of their theory that Plaintiff's claims are barred by the assumption of the risk, Additional Defendants rely on Plaintiff's deposition testimony.[6]

In her brief contra the instant motion, Plaintiff wholly fails to address Additional Defendants' reliance on the assumption of the risk doctrine, electing instead to further her theory that Defendant Kinser is liable for her injuries. Without citing to one iota of legal authority,

---

[6] "The *Nanty-Glo* rule prohibits summary judgment "where the moving party relies exclusively on oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genuine issue of material fact except where the moving party supports the motion by using admissions of the opposing party or the opposing party's own witness." *First Philson Bank, N.A. v. Hartford Fire Ins. Co.*, 727 A.2d 584, 587 (Pa. Super. 1999), *appeal denied*, 561 Pa. 658, 747 A.2d 901 (1999) (emphasis added)." Lineberger v. Wyeth, 894 A.2d 141, 149 (Pa. Super. 2006).

11

Plaintiff asserts that when "there is a carryover tenant not under a written lease this in no way releases the property owner from liability on the issue of snow and ice removal . . . The property owner is strictly liable even if there is a tenant and in this case there is no written agreement that passes an obligation to the tenant in any way[,] so liability squarely falls on the shoulders of the property owner." Plaintiff's Brief in Opposition to Defendants, Allen Vernal and Edwanda Shepherd's Motion for Partial Summary Judgment at 10. The Court has already analyzed this argument, *supra*, and has rejected it.

> Possessors of land owe a duty to protect invitees from foreseeable harm. Restatement, supra, §§ 341A, 343 & 343A. With respect to conditions on the land which are known to or discoverable by the possessor, the possessor is subject to liability only if he,

>> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and

>> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

>> (c) fails to exercise reasonable care to protect them against the danger.

> Restatement, supra, § 343. Thus, as is made clear by section 343A of the Restatement,

>> "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

> Restatement, supra, § 343A. See *Atkins v. Urban Redevelopment Auth. of Pittsburgh*, 489 Pa. 344, 352-53, 414 A.2d 100, 104 (1980) ("the law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by his invitee"); *Palenscar v. Michael J. Bobb, Inc.*, 439 Pa. 101, 106-07, 266 A.2d 478, 480, 483 (1970) (same); *Repyneak v. Tarantino*, 415 Pa. 92, 95, 202 A.2d 105, 107 (1964) (same); *Kubacki v. Citizens Water Co.*, 403 Pa. 472, 170 A.2d 349 (1961) (same). A danger is deemed to be "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment." Restatement,

12

supra, § 343A comment b. For a danger to be "known," it must "not only be known to exist, but ... also be recognized that it is dangerous and the probability and gravity of the threatened harm must be appreciated." Id. Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion. See Restatement, supra, § 328B comments c and d.

. . .

When an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from those risks. See Harper & James, The Law of Torts, Vol. 2 § 21.1 (1956); Prosser, Law of Torts § 68 at 440-446 (4th ed. 1971); Restatement, supra, § 496A comment o & § 496C comments b, d, & e. By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself.

Carrender v. Fitterer, 469 A.2d 120, 123-24, 125 (Pa. 1983).

By her deposition testimony, Plaintiff testified that the steps leading to the sidewalk in front of Additional Defendants' residence were covered in ice, and there was no clear path to traverse them. Memorandum of Law in Support of the Motion for Summary Judgment of Defendant, Kinser B604, LLC, Exhibit F at 36. When she arrived at the home that day, she used an adjacent banister to traverse the steps. Id. at 38. During her visit, she made a trip to the store, once again using the adjacent banister to traverse the steps on her way to the store, and upon her return. Id. at 42-45. On these occasions, it was light out, and Plaintiff could see the ice and snow on the steps and she noted them to be slippery. Id. However, at the time of her fall, Plaintiff was traversing the steps without holding onto the banister, even though there was nothing preventing her from doing so, and she knew from her experiences earlier that day that the steps were ice-covered and slippery. Id. at 57.

13

Upon consideration, the Court finds that Plaintiff was on notice of an open and obvious condition, and she could have avoided the same and prevented her harm by holding the handrail adjacent to the stairs, just as she did the prior three (3) times that she travelled the stairs that same day. See Catrender v. Fitterer, 469 A.2d 120 (Pa. 1983) (Plaintiff was owed no duty of care where traversed a clearly icy path into a building using available resources to steady herself on the way, but did not use available resources to balance herself upon exiting the building, thereby undertaking a known and avoidable risk). Accordingly, Additional Defendants' Motion for Summary Judgment is hereby GRANTED.

BY THE COURT:

_____
CRAIG A. DALLY,                    J.

14